UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VIOLA JONES,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

Case No. 3:14-cv-05951-KLS

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On February 29, 2012, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging disability as of November 1, 2002. *See* Dkt. 15, Administrative Record ("AR") 18. Both applications were denied upon initial administrative review on May 8, 2012, and on reconsideration on July 24, 2012. *See id.* A hearing was held

before an administrative law judge ("ALJ") on August 8, 2013, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 33-71.

In a decision dated August 16, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 18-28. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 24, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 404.981, § 416.1481. On December 11, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on March 11, 2015. *See* Dkt. 15. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in failing to properly consider all of plaintiff's severe impairments; (2) in evaluating the opinion of Mary Lemberg, M.D.; (3) in assessing plaintiff's residual functional capacity ("RFC"); and (4) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. Plaintiff further argues the Appeals Council erred by failing to properly consider new evidence submitted to it subsequent to the ALJ's decision. For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating Dr. Lemberg's opinion – and thus in assessing plaintiff's RFC and in finding her to be capable of performing other jobs existing in significant numbers on the national economy – and therefore in determining her to be not disabled. Also for the reasons set forth below, however, the Court finds that while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must

I. The ALJ's Evaluation of Dr. Lemberg's Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in

---

> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2dat 1119 n.10.

the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

With respect to the opinion evidence from Dr. Lemberg, the ALJ found as follows:

> On September 6, 2011, Mary Lemberg, M.D., conducted a comprehensive psychiatric evaluation. Ex. 10F. The claimant endorsed being [sic] poor concentration and low energy. She expressed feeling anxious and depressed daily and reported manic symptoms including irritability, impulsivity and racing thoughts. She explained that she had panic attacks about three times a month. The claimant also endorsed symptoms of posttraumatic stress disorder including flashbacks, nightmares, and hypervigilance. The claimant exhibited good grooming and was fully oriented. Dr. Lemberg observed the claimant's gait was somewhat slowed. The claimant was cooperative but demonstrated limited insight and judgment. Dr. Lemberg noted that there were points where the claimant seemed confused and gave her a blank look. The claimant was able to recall one of three items after a five-minute delay and performed a four-digit span backward after a number of attempts. The claimant was unable to identify the state south of Washington; however, she was able to identify a

> recent local news event. The claimant incorrectly performed a three-step command but correctly spelled "world" backward.
>
> . . .
>
> . . . Dr. Lemberg diagnosed the claimant with bipolar disorder type II, social phobia, generalized anxiety disorder, posttraumatic stress disorder, and benzodiazepine dependence in full sustained remission. Ex. 10F/6. She also noted rule out diagnoses of bipolar I, cognitive disorder, and learning disorder. She opined the claimant had a GAF score of 45.[[2]] Dr. Lemberg opined the claimant may not have the ability to perform simple and repetitive tasks and would find it difficult to adapt to new environments. She opined the claimant would have difficulty accepting instruction from supervisors and interacting with coworkers and the public. Dr. Lemberg opined the claimant would have difficulty performing work in [sic] a consistent basis without problematic interruption from her psychiatric condition and would have moderate difficulty dealing with the usual stress encountered in a competitive work environment. This opinion is not consistent with the claimant's treatment record showing little mental health treatment. Additionally, it is inconsistent with the [sic] some of the claimant's own reports of functioning, for example her report that she is able to shop several times a week. As such, this opinion is given little weight.

AR 24-26. Plaintiff argues the ALJ's stated reasons for rejecting Dr. Lemberg's opinion are not supported by substantial evidence. The Court agrees.

First, although lack of mental health treatment may indicate the absence of disabling mental health impairments, here the record does not clearly show this to be the reason why treatment is lacking in this case. Rather, it indicates this may be due to factors relating to her mental health condition or to problems with the treatment itself. For example, plaintiff told Dr. Lemberg that she did not believe the medications she received "helped 'at all,'" even though she "took them for about three months each." AR 565. Plaintiff also told Dr. Lemberg she "went to a

---

[2] A GAF or "global assessment of functioning" score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." *Id.* (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); *see also Cox v. Astrue*, 495 F.3d 614, 620 n.5 (8th Cir. 2007) (GAF score in the forties may be associated with serious impairment in occupational functioning).

psychiatrist a few years ago for an evaluation but she did not return because she felt 'paranoid' about discussing her problems." *Id.* Dr. Lemberg herself found plaintiff's insight and judgment to be "limited" (AR 566), further opining as follows:

> . . . Based on the encounter today and the information available at this time, her problems with bipolar disorder are partially treatable with medication management and psychotherapy, though she has never felt comfortable to seek specific mental health treatment. She has received a few antidepressant trials without benefit, though a mood stabilizer would be more appropriate for her bipolar disorder. Treatment may be limited by her reluctance to seek psychiatric care, and by the severity and chronicity of her symptoms. The likelihood of recovery is low as this is typically a chronic condition. Her condition may somewhat improve within the next 12 months, though this is only assuming optimal treatment, which I doubt she will be able to access. . . .

AR 568-69; *see also* SSR 96-7p, 1996 WL 374186 *7 (ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain" that failure). The ALJ did not appear to consider the above factors before concluding plaintiff's lack of treatment indicated the absence of significant mental health issues. That failure to do so was error.

Second, it is not entirely clear how plaintiff's report that she shopped several times per week (*see* AR 567 ("She goes grocery shopping three times per week.")) necessarily undermines Dr. Lemberg's opinion, particularly as there is very little detail regarding to the nature or extent of plaintiff's shopping activity each time she goes (*see id.*). Nor are the functional limitations Dr. Lemberg assessed necessarily inconsistent with plaintiff's report here. For example, Dr. Lemberg found plaintiff "may have difficulty accepting instructions from supervisors," and "would have some difficulty interacting with co-workers," as well as "moderate difficulty dealing with the usual stress encountered in a competitive work environment." AR 569. Such limitations are specific to the work setting, and therefore it certainly would not be unreasonable to find that an

individual is able to go shopping three times a week, and still be subject to these work-related restrictions. Accordingly, the Court finds the ALJ erred here.

II. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . subject to the following limitations. The claimant can lift or carry 20 pounds occasionally and 10 pounds**

> **frequently. She can stand or walk for two hours in an eight-hour workday and can sit for six hours in an eight-hour workday. She can occasional [sic] stoop and reach overhead. The claimant can occasionally climb ramps and stairs but cannot climb ladders, ropes, or scaffolds. The claimant can tolerate work that avoids concentrated exposure to hazards such as heights or moving machinery. She can perform simple routine tasks and instructions. The claimant can tolerate occasional co-worker and public contact.**

AR 22 (emphasis in original). As discussed above, though, the ALJ erred in rejecting the opinion of Dr. Lemberg concerning plaintiff's mental functional limitations. Defendant argues the ALJ's RFC assessment accounts for those limitations. However, Dr. Lemberg found plaintiff may have difficulty accepting instructions (*see* AR 569), while the ALJ found no such difficulty in that area. Dr. Lemberg also found plaintiff may not have the ability to perform simple tasks (*see id.*), whereas the ALJ again found no problem therewith. Nor does the ALJ's RFC assessment clearly account for many of the other functional limitations Dr. Lemberg found, such as the moderate difficulty dealing with the usual stress encountered in a competitive work environment, difficulty performing work activities on a consistent basis and difficulty adapting to new environments. *See id.* The ALJ's RFC assessment, therefore, cannot be said to be supported by substantial evidence and thus free of error.

III. <u>The ALJ's Step Five Determination</u>

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the

hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. *See* AR 66-67. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. *See* AR 66-68. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. *See* AR 27-28. But because the vocational expert's testimony is based on an erroneous RFC assessment, the ALJ's reliance on that testimony to find plaintiff to be capable of performing other jobs at step five also cannot be said to be supported by substantial evidence and thus free of error.

IV. <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is

unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record, and thus in regard to plaintiff's RFC and her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 2nd day of June, 2015.

Karen L. Strombom
United States Magistrate Judge